MARC E. JOHNSON, Judge.
 

 laThis case arises from a contract of sale between PlaintiffAppellee, Glenda Lambert, and Defendant/Appellant, Ray Brandt Dodge, Inc. The trial court from the 24th Judicial District Court rendered a judgment and award in favor of Plaintiff, after a trial on the merits, and dismissed the other defendants, Joel Duran and Craig A. Pesses, from the case with prejudice. From this decision, Defendant filed the appeal before this Court. For the following reasons, we affirm in part and amend in part.
 

 FACTS AND PROCEDURAL HISTORY
 

 According to the pleadings, Plaintiff visited Ray Brandt Dodge, Inc. dealership on February 7, 2004 to purchase a new automobile. Joel F. Duran, a salesman for the dealership, assisted Plaintiff with the purchase. Plaintiff purchased a Dodge Du-rango (“Durango”) on that evening with the additional assistance of the sales manager, Craig A. Pesses, for $38,298.88. Plaintiff wrote a check for $4,000.00 as a down payment and traded in her Dodge Caravan, which had a trade-in value of $20,700.00. At the time of purchase, the odometer read that |3the Durango had been driven 1,448 miles. The Durango was sold and financed as a new automobile.
 

 After returning home, Plaintiff noticed that the Durango had an inspection sticker
 
 *1111
 
 on the windshield. Subsequently, Plaintiff researched the car history and discovered the car was registered to Roberto Gonzales (“Mr.Gonzales”). On February 9, 2004, Plaintiff attempted to return the Du-rango, have her Dodge Caravan returned to her, and cancel the sale. None of those things occurred. After further research, Plaintiff found that the Durango was sold to Mr. Gonzales on January 2, 2004 for over $5,000.00 less than her purchase price. The odometer on the Durango only read 11 miles when Mr. Gonzales purchased it. Additionally, the Durango was still subject to a hen by Capital One Auto Finance pursuant to Mr. Gonzales’s purchase.
 

 Plaintiff, initially, stopped payment on the $4,000.00 check that she wrote to Defendant as part of her down payment. However, upon advice of counsel, she lifted the stop payment and notified Defendant that she had lifted the order. As of the date of trial, for unknown reasons, Defendant had not cashed the check from Plaintiff for the down payment.
 

 Plaintiff filed suit on March 26, 2004. Kelly Picou, a title clerk for Defendant, and Mr. Gonzales signed a “Request for Backout” on May 3, 2004 for cancellation of the sale.
 
 [1]
 
 The Louisiana Office of Motor Vehicles received the “Request for Backout”
 
 [2]
 
 ,
 
 [3]
 
 on May 7, 2004 and formally acknowledged the cancellation of the sale between Defendant and Mr. Gonzales on May 20, 2004. |4 The trial on the merits was set for April 14, 2009. Joel F. Duran and Craig A. Pesses did not appear at trial. The trial court ruled in favor of Plaintiff and awarded her damages in the amount of $42,710.73 plus interest against Defendant only.
 

 ASSIGNMENT OF ERRORS
 

 On appeal, Defendant alleges the trial court committed the following errors: 1) the trial court erred in finding that Defendant did not own the vehicle at the time of Plaintiffs purchase and concluding that the sale to Plaintiff was null and void under LSA-C.C. art. 2452; 2) the trial court erred in concluding that Defendant suppressed the truth about the mileage and prior sale of the Durango; and, 3) the trial court erred in awarding Plaintiff damages in the amount of $42,710.73.
 

 LAW AND ANALYSIS
 

 Ownership
 

 The appropriate standard for appellate review of factual determinations is the manifest error standard, which precludes the setting aside of a trial court’s factual findings unless they are clearly wrong.
 
 Lee v. Smith,
 
 08-455 (La.App. 5 Cir. 12/16/08); 4 So.3d 100, 105 citing
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). The reviewing court should affirm the trial court when the trial court judgment is not
 
 *1112
 
 clearly wrong or manifestly erroneous.
 
 Lee v. Smith
 
 at 105, citing
 
 Aleman v. Allstate Ins. Co.,
 
 04-948 (La.App. 5 Cir. 1/11/05); 894 So.2d 382, 384. In order to reverse a fact finder’s determination on the basis of manifest error, a two-part test must be satisfied: 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must also determine that the record establishes that the finding is clearly wrong.
 
 Morris v. Zurich American Ins. Co.,
 
 05-109 (La.App. 5 Cir. 5/31/05); 905 So.2d 1139, 1141, citing
 
 Weatherford v. Commercial Union Ins.,
 
 94-1793 (La.2/20/95); 650 So.2d 763, 766.
 

 Defendant argues that the trial court’s legal determination that the Duran-go was still owned by Mr. Gonzales at the time of the sale to Plaintiff was clearly wrong and contrary to the law. In concluding that Defendant did not own the Durango at the time of the sale to Plaintiff, Defendant further argues that the trial court ignored the general obligations and sales provisions of the Louisiana Civil Code and erroneously relied on the registration requirements of the Louisiana Vehicle Certificate of Title Law, LSA-R.S. 32:701, et seq., as evidence of ownership. We find that these arguments are merit-less.
 

 A contract is an agreement by two or more parties whereby obligations are created, modified or extinguished. LSA-C.C. art. 1906. Contracts have the effect of law between the parties and may be dissolved only through the consent of the parties and on grounds provided by law. LSA-C.C. art. 1983. If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances. LSA-C.C. art. 1846. The sale of a thing belonging to another does not convey ownership. LSA-C.C. art. 2452.
 

 A contract of sale of movables may be established by conduct of both parties that recognizes the existence of that contract even though the communications exchanged by them do not suffice to form a contract. LSA-C.C. art. 2602. In such a case, the contract consists of those terms on which the communications of the parties agree, together with any applicable provisions of the suppletive law.
 
 Id.
 

 The sale of a motor vehicle is governed by the articles in the Louisiana Civil Code relating to the sale of movables.
 
 Biggs v. Prewitt,
 
 95-0315 (La.App. 1 Cir. 10/6/95); 669 So.2d 441, 443,
 
 writ denied,
 
 96-1035 (La.5/31/96); 674 So.2d 264. This state does not require that the certificate of title to a vehicle be transferred in | [¡order for the sale to be a valid one.
 
 Id.
 
 The certificate of title constitutes
 
 prima facie
 
 proof of ownership.
 
 Ford Motor Credit Company v. Soileau,
 
 323 So.2d 221, 223 (La.App. 3 Cir.1975). However, the certificate of title is not conclusive proof of ownership, and that proof showing different ownership is admissible.
 
 Id.
 

 In the instant case, the trial court was not clearly wrong in making the legal determination that Mr. Gonzales, not Defendant, was still the owner of the Durango at the time of the sale to Plaintiff. At trial, Plaintiff submitted evidence proving that the Durango was registered to Mr. Gonzales at the time she purchased it. The only evidence submitted by Defendant that the sale of the Durango to Mr. Gonzales was cancelled and Defendant owned it on February 9, 2004 was the “Request for Backout” that referenced the mutual agreement between Defendant and Mr. Gonzales on January 2, 2009. Although the certificate of title is not conclusive proof of ownership, the “Request for Back-
 
 *1113
 
 out” was not sufficient proof showing different ownership.
 
 [4]
 

 Because Defendant did not submit any other proof of the mutual agreement to cancel the sale that would refute the theory that Defendant did not have ownership of the Durango, the trial court had no other evidence than the registration information to consider for ownership of the Durango on the date Plaintiff purchased it. It is' true that the Durango was in the physical possession of Defendant at the time of sale. There are varied conclusions that could be made as to why the Durango was on Defendant’s lot. However, there is insufficient proof presented by Defendant as to whether the cancellation of the sale between Mr. | -¡Gonzales and Defendant was made prior to Plaintiffs purchase of the Durango.
 
 [5]
 
 Defendant could not convey ownership of the Durango to Plaintiff if it was owned by Mr. Gonzales, and the sale between Defendant and Plaintiff is null and void. Therefore, we find that the trial court was not clearly wrong in its factual determination that Mr. Gonzales was the owner of the Durango on the date Plaintiff purchased it, and we will not disturb its ruling.
 

 Suppression of the Truth
 

 Defendant argues that the trial court erroneously concluded that Defendant suppressed the truth about the mileage and prior sale of the Durango, but correctly held that Plaintiff could have easily ascertained the truth about the Duran-go prior to purchasing the vehicle. Defendant further contends that the evidence does not support that Defendant’s silence as to the cancelled sale to Mr. Gonzales and/or its statements as to the nature of the miles were a suppression of the truth. We find little merit to these arguments.
 

 “New motor vehicle” means a motor vehicle whereby the legal title to which has never been transferred by a manufacturer, distributor, or dealer to an ultimate purchaser. LSA-R.S. 32:1252(27). “Ultimate purchaser” means, with respect to any new motor vehicle, the first person, other than a dealer purchasing in his capacity as a dealer, who in good faith purchases such new motor vehicles for purposes other than resale. LSA-R.S. 32:1252(34).
 

 
 *1114
 
 | ¡¿Defendant is claiming ignorance of its employees while also averring that Plaintiff could have easily ascertained the truth about the Durango. However, the same researched information that was available to Plaintiff was also available to Defendant’s employees at the time of the sale to Plaintiff. The inspection sticker on the windshield was open and obvious to all parties during the negotiation of the sale, which would have indicated that the car had been registered to an ultimate purchaser. Additionally, Plaintiff testified at trial that the salesman assured her that the Durango was “new,” and the mileage on the Durango was incurred through demonstration miles and transportation. Defendant did not present any evidence to contradict Plaintiffs testimony. The trial court had limited evidence to consider, and it was reasonable for the fact finder to determine that Defendant, through its employees, suppressed the truth about the Durango. Therefore, we find that the trial court was not clearly wrong in its determination, and we will not disturb its ruling.
 
 Damages
 

 For the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion.
 
 Williams v. Roberts,
 
 05-852 (La.App. 5 Cir. 4/11/06); 930 So.2d 121, 122, citing
 
 Theriot v. Allstate Ins. Co.,
 
 625 So.2d 1337, 1340(La.1993). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions.
 
 Williams
 
 at 122. The discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages.
 
 Id.
 

 Defendant avers that the trial court erred in awarding Plaintiff improperly included non-pecuniary damages in the amount of $2,000.00 and costs and fees in |9the amounts of $926.95 and $235.00. Additionally, Defendant avers that the trial court used an incorrect amount of $38,298.88 as the total paid by Plaintiff, and assigned a value, $7,000.00, which was not placed in evidence, as to the current value of the Durango. Defendant further avers that the trial court also erred in failing to give Defendant a credit for Plaintiffs use of the vehicle and the $4,000.00 down payment owed by Plaintiff to Defendant. For these reasons, Defendant argues that the trial court’s damage award must be vacated and corrected.
 

 The trial court awarded the following damages to Plaintiff in an attempt to restore the parties to their pre-contract position:
 

 Total amount paid to Plaintiff for the Durango $38,298.88
 

 Less current value of the Durango - $ 7,000.00
 

 Plus total trade in value of the Caravan + $20,700.00
 

 Less amount paid by Defendant on the Caravan - $12,450.00
 

 Plus mental aguish and inconvenience + $ 2,000.00
 

 Plus Department of Motor Vehicle fees incurred by Plaintiff to correct the title problem + $ 235.00
 

 Deposition cost + $ 926.95
 

 Amount due to Plaintiff $42,710.73
 

 Plaintiff financed the Durango with Hibernia National Bank for $38,298.88. At the time of the trial court’s judgment, Plaintiff had not repaid the entire amount. However, Plaintiff is still responsible for repaying the entire amount of $38,298.88. As a result, it is inconsequential as to the actual amount paid by Plaintiff for the Durango at the time of the judgment. We find that the trial court was not clearly wrong in awarding the $38,298.88 to Plaintiff.
 

 
 *1115
 
 J^Beeause the trial court is given vast discretion in awarding general damages,
 
 [6]
 
 we will not disturb the trial court’s award of $2,000.00 for mental anguish and inconvenience.
 
 [7]
 
 In an effort to restore the parties to their pre-contract positions, the trial court awarded Plaintiff $235.00 for the fee incurred from the Department of Motor Vehicles to correct the title problems and $926.95 for the deposition cost. We do not find that the awards by the trial court for the deposition cost and the title correction fees to restore Plaintiff to her pre-contract position were clearly wrong.
 

 In the award calculation, the trial court credited Defendant with $7,000.00 for the current value of the Durango. However, no evidence of the current value of the Durango was presented from either party to the trial court. The current value is not a general damage, whereby the fact finder has great deference in allocating. The current value of the Durango is a specific damage with a specified amount. Since no evidence was submitted to the trial court at any point prior to this appeal as to the current value of the Durango, we have no evidence to review as the validity of the amount credited. A party who fails to present proof of an element of damages is deemed to have abandoned the claim.
 
 Boyd v. Farmers-Merchants Bank & Trust Co.,
 
 493 So.2d 866, 868 (La.App. 3 Cir.1986),
 
 writ denied,
 
 496 So.2d 1047 (La.1986). Therefore, we vacate the trial court’s credit of the $7,000.00 for the current value of the Durango.
 

 The trial court omitted Defendant’s credit for Plaintiffs $4,000.00 down payment that was still owed to Defendant. In following the rationale of the trial court, if the parties are restored to them pre-contract position, then Plaintiff does not owe Defendant any payments or fees, which would include the $4,000.00 for |n the down payment. The credits that Defendant does receive are for payments made by Defendant on behalf of Plaintiff. Therefore, we do not find that this omission by the trial court of the credit of $4,000.00 to Defendant was clearly wrong.
 

 Considering the foregoing findings by this Court, the new award calculation is as follows:
 

 Total amount paid to Plaintiff for the Durango $38,298.88
 

 Plus total trade in value of the Caravan + $20,700.00
 

 Less amount paid by Defendant on the Caravan - $12,450.00
 

 Plus mental aguish and inconvenience + $ 2,000.00
 

 Plus Department of Motor Vehicle fees incurred by Plaintiff to correct the title problem + $ 235.00
 

 Deposition cost + $ 926.95
 

 Amount due to Plaintiff $49,710.83 plus interest
 

 DECREE
 

 For the foregoing reasons, we amend the judgment to vacate the $7,000.00 credited to Defendant for the current value of the Durango and affirm all other issues raised. All costs of the appeal are assessed against Defendant.
 

 AFFIRMED IN PART AND AMENDED IN PART
 

 [1]
 

 . Copies of the “Request for Backout” submitted into evidence as "Dl” by Defendant reference that the vehicle was canceled by mutual agreement on January 2, 2004. However, one copy submitted does not have the signature of a notary public.
 

 [2]
 

 . The copy of the "Request for Backout” received by the Office of Motor Vehicles submitted by Defendant, also labeled as "Dl,” has the signature of a notary without a date. However, from the copy submitted, there is no visible notary number or bar roll number.
 

 [3]
 

 .Of the items needed to cancel a sale, a notarized affidavit from the dealer and a notarized affidavit from the customer containing a complete description of the vehicle, stating what has happened and to whom the sales tax should be refunded is required, pursuant to Section IV of the Motor Vehicle Registration Requirements, Number 97.00 of the Louisiana Department of Public Safety, Office of Motor Vehicle’s policy.
 

 [4]
 

 . The "Request for Backout” is not considered sufficient proof because the validity of the document is in question. During trial, Kelly Picou testified that she had no contact with Mr. Gonzales, and she did not witness the notarization of the "Request for Backout.” Additionally, Kelly Picou testified that she entered January 2, 2004 as the date of cancellation only because it was the procedure to use the date of purchase as the date of cancellation. It is unknown to this Court as to what the exacl date of the mutual agreement between Defendant and Mr. Gonzales to cancel the sale was made.
 

 [5]
 

 . Assuming arguendo, even if it is true the mutual agreement was made prior to the sale to Plaintiff, it would be safe to assume that the agreement would eventually be reduced to writing. Written documentation of the agreement would be needed to transfer the title from Mr. Gonzales to Defendant, so the car could be resold by Defendant and cancel the lien held by Capital One Auto. Jurisprudence holds that the mutual agreement would not have been enforceable against Plaintiff until it was reduced to writing. In
 
 Breaux Bros. Const. Co. v. Associated Contractors,
 
 77 So.2d 17, 20, 226 La. 720, 729 (La.1954), the Louisiana Supreme Court held,
 

 Therefore, even if all of the terms of the alleged contract between plaintiff and defendant had been verbally agreed upon, no valid contract would have existed between the parties because this case fall within the second class of cases discussed in
 
 Fredericks v. Fasnacht,
 
 30 La.Ann. 117 (citation added), and therefore in this case the final consent of the parties was suspended until such time as the contract should be reduced to writing and signed by all the parties. See also LSA-C.C. art. 1947.
 

 [6]
 

 . Mental anguish and distress are included in an award of general damages.
 
 Vicknair v. St. James Parish School Bd.,
 
 05-149 (La.App. 5 Cir. 6/28/05); 907 So.2d 820, 823.
 

 [7]
 

 . This case is distinguished from
 
 Young v. Ford Motor Co., Inc.,
 
 595 So.2d 1123 (La.1992) and LSA-C.C. art. 1998, which deal with non-pecuniary awards arising from breach of contract cases. This case arises from an absolutely null sale, not a breach of contract.