LABORDE, Judge.
This is a suit for wrongful conversion. Plaintiff, Robert L. Waterbury, appeals the trial court’s determination that the sale of Mr. Waterbury’s car by defendant, L.J. Quebedeaux, was proper pursuant to LSA-R.S. 32:521. The trial court denied plaintiffs damage demand for the seizure and sale of the car along with plaintiffs demand for embarrassment and inconvenience damages. The trial court also denied the reconventional demand asserted by L.J. Quebedeaux for wrecker and storage fees. Both plaintiff and defendant appeal. We affirm.
FACTS
On July 1, 1980, plaintiff, while attempting to enter his driveway, allegedly bogged down his 1979 Ford LTD on a mound of dirt. The car was stuck in a disputed area which may or may not have been part of a portion of land expropriated by the State of Louisiana as a highway right-of-way. The plaintiff, at that time, had a judgment against him which prevented him from “contacting, harassing, delaying, harming, threatening, obstructing and/or preventing in any manner whatsoever, any person or persons from working on the [expropriated] property.” After plaintiff left the scene, the state police arrived and had defendant tow plaintiffs automobile to his Union Street service station. Plaintiff returned to the road within one hour of the car allegedly being bogged down. He noted the disappearance, but investigated no further. The defendant held the plaintiffs vehicle for a few days at his Union Street station and then had it towed to a storage facility on Compress Road. Defendant testified that he kept towed automobiles at his Union Street station for a couple of days and then he would routinely move them to his Compress Road facility as a safety measure.
Beyond the initial towing of the defendant’s automobile, the testimony of the plaintiff and defendant is conflicting as to when the plaintiff first knew his automobile was in the possession of the defendant. Morgan Goudeau, St. Landry Parish District Attorney, testified that the plaintiff notified him regarding the disappearance of his automobile in 1980 and a number of times thereafter. Goudeau testified he advised the plaintiff to contact the state police and possibly contact an attorney because of the expropriation suit. The record reflects that at that time the plaintiff did neither.
In July of 1980, the defendant notified the Louisiana state police by mail that the plaintiff’s 1979 Ford LTD was in his possession. The state police wrote back notifying the defendant that the vehicle was registered in the name of the plaintiff, Robert L. Waterbury. Three months later, in October of 1980, the plaintiff notified the St. Landry Parish Sheriff’s office that his vehicle was missing. The record shows that the next day, while checking on his vehicle, the plaintiff was informed by a sheriff’s deputy, Milton Hargroder, that his automobile had not been stolen, but was in the possession of the defendant. Plaintiff denies this testimony.
In April of 1981, defendant sent a registered letter to plaintiff informing him that his vehicle could be recovered by paying the wrecker and storage fees. The plaintiff never responded. Instead, the plaintiff filed suit 1½ years later for wrongful seizure. The suit was dismissed under an exception of prescription. In *384 June of 1983, two years after the letter was received by the plaintiff, the defendant decided to sell the plaintiff’s automobile to recoup the wrecker and storage fees. On June 17, 1983, the defendant’s attorney sent a letter to the plaintiff informing him (1) where the vehicle was located; (2) the outstanding wrecker and storage fees; and (3) that the automobile would be sold pursuant to LSA-R.S. 32:521, if not retrieved by the plaintiff within 15 days.
On July 5, 1983, the defendant obtained two “appraisals” in the amount of $675.00 and $600.00. Subsequently, application was made and granted by the Department of Public Safety, State of Louisiana, to sell the vehicle. On July 27, 1983, after advertisement in the local newspaper as required under LSA-R.S. 32:521, the automobile was sold by public auction to the defendant’s son for $425.00, two-thirds of the high and low “appraisals.” The next day, the plaintiff went to the defendant’s service station and proceeded to get into the automobile, start the engine and move it towards the gas pump. At this point, the plaintiff was stopped and confronted by the defendant. The City Police were called and plaintiff was taken into custody. On November 3, 1983, plaintiff filed the present suit alleging wrongful sale and demanding the return of his automobile and damages for its deterioration plus damages for humiliation, inconvenience, and embarrassment.
The trial court found “[t]hat the defendant was not a depository in such a status that required him to protect the automobile from ordinary wear and tear, weather or passage of time.” The court also found that the “plaintiff deliberately refused to regain his car” after learning of its whereabouts in October of 1980. Instead, the plaintiff decided to play a waiting game for purposes of his own. Further, the court found that the appraisal of the automobile, although technically defective in procedure, would be allowed and that the sale was valid under LSA-R.S. 32:521. Having found the sale of the automobile valid, the trial court denied any damages. Further, the defendant was also denied any wrecker or storage fees. In this case, the defendant received $425.00 for wrecker and storage fees totaling $5,240.00.
ASSIGNMENT OF ERROR NUMBER 1
Plaintiff asserts that “[t]he trial court erred in finding that the operator of a towing service and storage yard who picked up an automobile and held it as a compensated bailee, pusuant to the provisions of La.R.S. 32:521, was not a depositary, or in such status, that he would be required to protect the automobile in any fashion while it was in his possession.”
Plaintiff would have us rely on the principles of a compensated deposit as explained in Douglas v. Haro, 32 So.2d 387 (La.App.1947), reversed on other grounds, 214 La. 1099, 39 So.2d 744 (La.1949). In Douglas, the court explains the concept of a depository and how one put in possession of property has a responsibility of protecting that property. In Douglas, an automobile garage accepted for storage a vehicle which was later taken from the premises by an employee and wrecked. The garage was found liable and had to pay damages to the owner of the wrecked automobile.
Defendant cites Swain v. Hymel, 377 So.2d 888 (La.App. 4th Cir.1979), where the plaintiff brought suit for the value of his automobile which plaintiff claimed was lost while in the possession of the defendant. In Swain, the plaintiff’s automobile was towed at the request of the state police. The plaintiff removed some articles from his automobile the next day. The court held that once the defendant knew the location of his automobile and did nothing to protect it “until somebody told the plaintiff that defendant had moved his vehicle,” constituted abandonment. Since the plaintiff effectively abandoned the vehicle by leaving it with the defendant from September of 1972 until May of 1974, the plaintiff was responsible for the vehicle and could not “shift to defendant his blame for failing to protect his property over a long period of time.” Id. at 888.
In the instant case, the plaintiff's car was removed from the highway right- *385 of-way in July of 1980. The trial court found that the plaintiff knew in October of 1980 the location of his vehicle. Now, after approximately two years from the date the plaintiff first definitely knew of the location of the vehicle, he would have us return the car and award damages for its deterioration. Vigilantibus et non dormientibus jura subveniunt.[1] The plaintiff never once questioned the defendant as to the condition of the car or whether it was being properly cared for. Nor did the plaintiff check on his vehicle, call the defendant to arrange to drop off the keys to the automobile, or make arrangements to protect the vehicle from wear and tear or deterioration. Here, as in Swain, plaintiff is the cause of his own misfortune.
ASSIGNMENT OF ERROR NUMBER 2
In the second assignment of error, plaintiff asserts that “[t]he trial court erred in refusing to set aside the sale of the appellant’s automobile pursuant to La.R.S. 32:521, after finding clear non-compliance with the statute.” Specifically, plaintiff asserts that the defendant did not comply with LSA-R.S. 32:521 by: (1) not giving the exact location of the vehicle; (2) not notifying the local police that plaintiff’s automobile had been towed;[2] (3) that under LSA-R.S. 32:521(E), the appraisals were made by competent, qualified, independent appraisers and; (4) that as required under LSA-R.S. 13:4363(A), the provision applicable to judicial sales, was not germane to the validity of the sale.[3]
Under (1) above the plaintiff argues that strict compliance with LSA-R.S. 32:521 would require the “exact location of the vehicle.” We agree, but consider this harmless error considering that the plaintiff was informed that the vehicle was in possession of the defendant and only moved as a safety measure.
Under (3) above plaintiff argues that the valuation given was in fact a bid and not an appraisal. There was testimony by one of the appraisers, Charles Wayne Doucet, who was accepted by the court as an appraiser of used cars, that the price he gave was a “bid.” Plaintiff’s argument that the valuation was of no value is to this court a game of semantics. In testimony, Doucet stated that the bid was what he felt the value of the car'was at that time. Any distinction between an appraisal and a bid was harmless error in this case.
The plaintiff relies principally on Jackson v. Brumfield, 442 So.2d 518 (La.App. 1st Cir.1983) to support his position regarding technical compliance. In Jackson, the plaintiff’s vehicle was sold for wrecker and storage fees after being towed in by the defendant. The automobile was sold immediately after the ninety (90) day time limit for sale by public auction. The plaintiff got two appraisals for $325.00. The court found the appraisals were erroneous and of no use to the court. The court relied principally on a property adjuster to place an average value as per the NADA book at the time of the sale. The court then proceeded to award damages for the value of the vehicle and mental anguish as of the time of the conversion.
In the instant case, there is no showing by anyone, including plaintiff, that the true value of the automobile was anything but what the two appraisers determined. *386 There was testimony as to the value of a like automobile in good condition. The only testimony as to the plaintiffs automobile is that it was in very poor condition at the date of the sale. Furthermore, there was no indication at trial which would imply that the appraisers were anything but competent, qualified, and independent. We do not attempt in this ease to lessen the importance of following the proper procedures in the public sale of an impounded automobile. If we determined that the appraisals were way out of line and placed a value on the automobile which had no correlation to its actual value, we would consider Jackson dispositive. The trial judge correctly evaluated this case in finding that the appraisals were not out of line with the market value of the automobile. In any event, a bid five times that of the average appraisal still would have been considerably less than the wrecker and storage fees.
Great weight must be given to the factual conclusions reached by the trier of fact. We will not substitute our own evaluations and inferences of the trier of fact unless the conclusions are clearly erroneous. Abadie v. Morales, 391 So.2d 974 (La.App. 4th Cir.1980).
We find that the trial court was correct in finding the appraisals, although not strictly adhering to the statutory requirements of LSA-R.S. 32:521, reflected the market value of the automobile at the time of the sale. As the trial judge stated in reasons for judgment, “the deviation from the statute (32:521) other than the failure to notify of appraisal are not germane to the validity of the sale and were otherwise harmless or cured by circumstances of the case.... Furthermore, even if I evaluate the vehicle as much as possible in plaintiff’s favor, the appraisal would have been considerably less than defendant’s storage claim. Defendant would have bid his claim and ended up with the car anyway, unless plaintiff had overbid as a harrassing tactic.”
We are at a loss to see what would be accomplished by holding the sale of the automobile invalid. We find substantial compliance with the applicable statute. It would be a miscarriage of justice to do anything but declare the sale valid.
ASSIGNMENT OF ERROR NUMBER 3
Plaintiff next asserts that “[t]he trial court erred in refusing to award damages for the wrongful seizure and sale of an automobile pursuant to La.R.S. 32:521 caused by deterioration of the automobile or for humiliation and embarrassment caused by the wrongful seizure and sale.”
Since we have determined that the sale was valid under LSA-R.S. 32:521, we need not determine damages caused by deterioration of the automobile or for humiliation and embarrassment caused by the seizure and sale.
DEFENDANT’S ASSIGNMENT OF ERROR
Defendant asserts that the trial court erred in not awarding defendant wrecker and storage fees on the vehicle.
Defendant is not entitled to damages for wrecker and storage fees. Defendant sold the vehicle after authorization from the State of Louisiana to the highest bidder.
“There is no evidence that service of a notice of seizure was effected or that notice to the debtor for the appointment of an appraiser was given or that an oath of the appraiser was filed as required in a judicial sale under LSA-R.S. 13:4363 and LSA-R.S. 13:4365_ In such instances, when the requirements for a judicial sale are not met, a creditor cannot avail himself of the benefit of a deficiency judgment under LSA-R.S. 13:4106 and LSA-R.S. 13:4107, the Deficiency Judgment Act.”
Exchange National Bank of Chicago v. Spalitta 295 So.2d 18 (La.App. 4th Cir.), reversed on other grounds, 321 So.2d 338 (La.1975).
*387 CONCLUSION
For the above and foregoing reasons, the judgment of the trial court dismissing the plaintiffs and defendant’s claims is affirmed. Costs of this appeal are taxed equally to plaintiff and defendant.
AFFIRMED.

. The laws aid those who are vigilant, not those who sleep upon their rights.

. The effective date of LSA-R.S. 32:521(A)(l)(a), which requires the owner or operator of the truck towing the vehicle to notify the local police, was not in effect when the plaintiffs vehicle was towed and need not be followed (Act 407 of 1982, effective September 10, 1982).

. LSA-R.S. 13:4363(A) provides:
“A. Not less than seven days, exclusive of holidays, before the sale of seized property, the sheriff shall serve written notice on the debtor and on the seizing creditor, in the manner provided for the service of a citation, directing each to name an appraiser to value the property and to notify the sheriff of his appointment prior to the time stated in the notice, which shall be at least four days, exclusive of holidays, prior to the time of the sale. The appraisal of the debtor and seizing creditor shall be made and delivered to the sheriff at least two days, exclusive of holidays, prior to the time of the sale.”